# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No.　　3:19-CR-00130 |
| | : | 　　　　　　　3:18-PO-00062 |
| v. | : | |
| | : | Judge Thomas M. Rose |
| LAWRENCE H. PUCH, | : | |
| | : | |
| Defendant-Appellant. | : | |

---

### ENTRY AND ORDER AFFIRMING DEFENDANT'S CONVICTION AND SENTENCE
---

Defendant/Appellant Lawrence H. Puch ("Puch") appeals the Judgment in a Criminal Case entered by United States Magistrate Judge Michael J. Newman on August 22, 2019 (the "Judgment"). This Court has jurisdiction pursuant to 18 U.S.C. § 3402. *See also* FED. R. CRIM. P. 58(g)(2). Puch filed a brief in support of the appeal ("Puch's Appellate Brief"). (Doc. 6.) The United States of America (the "Government") filed a brief in support of affirming the Magistrate Judge's decision ("Government's Appellee Brief"). (Doc. 8.) Puch did not file a reply brief, and the time to do so has now passed. The appeal is ripe for the Court's review. For the reasons discussed below, Puch's appeal is **DENIED** and the Judgment is **AFFIRMED**.

I.　　**BACKGROUND**

　　**(1) Underlying Trial, Judgment, and Sentence**

This case is an appeal from Puch's conviction for one count of disorderly conduct under 38 C.F.R. § 1.218(b)(11) following a bench trial before Magistrate Judge Newman. (Doc. 1; Doc.

1

46 in Case No. 3:18-po-00062.)  Judge Newman found Puch guilty of the charge at issue and sentenced him to six months of unsupervised Probation.  (*Id.*; Doc. 51 in Case No. 3:18-po-00062 at PAGEID # 521-22.)  Judge Newman also found that Puch received actual and constructive notice of the criminal charge, and that Puch's First Amendment challenge failed.  (Doc. 51 in Case No. 3:18-po-00062 at PAGEID # 522.)  The bench trial lasted three days, two of which involved witness testimony.  (Docs. 48, 49, 50 in Case No. 3:18-po-00062.)  Government Exhibits 1, 2, 3, and 4, as well as Defendant's Exhibits A, B, D, and E, were admitted into evidence at the trial.  (Docs. 32, 37, 48 at PAGEID # 388, and 50 at PAGEID # 498 in Case No. 3:18-po-00062.)

### (2) Factual Background

Puch is a veteran of the United States Air Force, having been deployed on nearly 200 bombing missions during the Vietnam War.  (Doc. 48 in Case No. 3:18-po-00062 at PAGEID # 419-21.)  He has a 100-percent disability rating from the U.S. Department of Veterans Affairs ("VA"), based on a diagnosis of post-traumatic stress disorder (PTSD) first made approximately 25 years ago.  (*Id.*)

On February 28, 2018, Puch visited the Dayton VA Medical Center for a scheduled appointment.  (*Id.* at PAGEID # 425-26.)  At his appointment, he interacted with Dr. Donna Beaven ("Dr. Beaven"), who took him from the waiting room into her examination room.  (*Id.* at PAGEID # 356-57, 425-27.)  Dr. Beaven has been a nurse since 1982, a nurse practitioner since 2000, and employed by the VA since 2008.  (*Id.* at PAGEID # 352.)  Most of the patients she treats are men, although this was her first encounter with Puch.  (*Id.* at PAGEID # 351-52, 361.)

During the examination, according to Dr. Beaven, Puch indicated to her that he was

2

unhappy with his previous medical provider. (*Id.* at PAGEID # 359-60.) He told Dr. Beaven that he had pain in his neck, he had been experiencing that pain for 12 years, and he had been receiving tramadol each month. (*Id.* at PAGEID # 360.) Dr. Beaven knew that tramadol is a narcotic, part of the morphine family, addictive, and has potential side effects. (*Id.* at PAGEID # 364.) Dr. Beaven testified that, as she attempted to complete her examination and assessment, Puch demanded tramadol. (*Id.* at PAGEID # 360-63.) According to Dr. Beaven, Puch was "impatient, uncooperative, [and said to her] 'I told you what I want in one statement. What I want is my tramadol.'" (*Id.* at PAGEID # 362.)

During her testimony, Dr. Beaven read from part of a witness statement that she had previously written and signed (and that was admitted into evidence as Government Exhibit 4). (Doc. 48 in Case No. 3:18-po-00062 at PAGEID # 363-64, 388.) She read: "I started to review the MRI report with the veteran [i.e., Puch] and attempted to explain different treatment approaches. Vet [i.e., Puch] became very aggressive and got up and said 'You are one fucking idiot and a fucking nigger.'" (*Id.*) Dr. Beaven testified that she responded by telling Puch that she was going to call the police. (*Id.* at PAGEID # 364.) She "started to reach over to the phone, and then [Puch] got up, and then [she] backed [herself] out of" her examination room. (*Id.* at PAGEID # 364-65.)

According to Dr. Beaven, she exited backwards out of her examination room because she did not know what Puch would do. (*Id.*) She testified that she did not know Puch's intentions or whether he would try to harm her, but the potential for him to do so was there. (*Id.* at PAGEID # 365, 371.) She said that she is five-foot-six-inches tall and estimated that Puch was six-foot-four-inches tall and 300 pounds. (*Id.* at PAGEID # 358.) She also estimated that the size of her

3

examination room was approximately "ten-by-ten," and it contained "a small desk with [her] computer, two computer screens, … two small cabinets, … another larger tall cabinet, … an examination table, … two chairs, … [and a] garbage can." (*Id.* at PAGEID # 357-58.) Dr. Beaven called the police, using the emergency line to report the incident. (*Id.* at PAGEID # 368, 371.) Puch had left the examination room by the time that Dr. Beaven called the police. (*Id.* at PAGEID # 371-72.)

Dr. Beaven also testified that Puch's statement made her feel demoralized. (*Id.* at PAGEID # 364.) Regarding its impact on her ability to provide care, the following exchanges occurred at trial:

> Q. Did the defendant calling you that racial epithet disrupt or impede your ability to provide care for other vets on that day?
>
> A. Yes, it did. It changed the tenor of the interaction at [sic] my day.
>
> Q. Did it disrupt your day?
>
> A. Very much so.
>
> …
>
> Q. So when you talked with the remaining patients [that day], whether it was realtime or telephonically, were you still in that space? Were you still in a disrupted space?
>
> A. You try to collect yourself back together, but certain behaviors take a toll on you emotionally. And even though you try to collect your thoughts and proceed and to be as professional as you can, you're still affected emotionally.
>
> Q. So is it fair to say, Dr. Beaven, that your interaction with the defendant had a negative impact on your ability to interact or provide care with the remaining veterans to whom you were determined to give some adequate care to?
>
> A. It did affect my – it did – his negative interaction did impact my abilities, yes.

(*Id.* at PAGEID # 365-66, 386-87.) Dr. Beaven was unable to complete her evaluation of Puch because he walked out. (*Id.* at PAGEID # 377.) And, her testimony indicates that she was late

in providing care to other patients—either in real time or telephonically—after her interaction with Puch, although she was able to complete the rest of her responsibilities at work that day. (*Id.* at PAGEID # 382-83, 386.)

Lance Wilker ("Mr. Wilker"), a VA Police Officer in Dayton at the time, also testified at the trial. (Doc. 48 in Case No. 3:18-po-00062 at PAGEID # 310-15.) Mr. Wilker responded to Dr. Beaven's call to the emergency line, employing his vehicle's lights and sirens. (*Id.*) Following his arrival at the scene, he tried to pursue Puch based on information provided by staff members, notifying other officers of the situation and conducting a foot patrol of surrounding areas. (*Id.*; Government Exhibit 1.) However, he was unsuccessful in contacting Puch at that time. (Doc. 48 in Case No. 3:18-po-00062 at PAGEID # 313.)

According to Mr. Wilker, he then spoke with Dr. Beaven, who informed him "that Mr. Puch arrived demanding an Rx for a narcotic … that [Puch] was very aggressive with her and intimidating," and "that after Mr. Puch stood up demanding the Rx, that he called her a fucking idiot and a fucking nigger." (*Id.* at PAGEID # 314-15.) Mr. Wilker testified that, based on his training and experience, he could tell that "Dr. Beaven was very scared due to the situation that happened, and was needing help." (*Id.*)

Mr. Wilker also testified that he completed both the Violation Notice and the Violation that comprise Government Exhibit 2. (*Id.* at PAGEID # 319-20, 337.) A portion of the Violation states:

**Violation Description**

On February 28th, 2018 at approximately 1517 hrs, I responded to Building 340 for a disruptive patient. A search for the patient was met with negative results. During investigation, patient was identified as Lawrence Puch who became disruptive while attending an appointment. Puch stated to employee that she was a fucking idiot and a nigger while demanding mediation and then departed the area. A check

>of LEADS showed no wants/warrants. I issued one United States District Court Violation Notice for 38 CFR 1.218(B)(11) Disorderly Conduct.

(Government Exhibit 2 at p.2 (emphasis in original).)

Bradley White ("Mr. White") also testified at the trial. (Doc. 50 in Case No. 3:18-po-00062 at PAGEID # 469.) Mr. White is the disruptive behavior coordinator for the Dayton VA, with a role as facilitator of the Disruptive Behavior Committee (the "Committee"). (*Id.* at PAGEID # 469-70.) Mr. White explained that the Committee addresses and assesses all disruptive behavior incidents at the Dayton VA Medical Center and the community-based outpatient clinics. (*Id.*) The Committee is not a part of, or affiliated with, the Dayton VA police force, and it is not a branch or arm of law enforcement. (*Id.*) Mr. White testified that its main purpose is to ensure that the VA facilities are safe for employees, veterans, and visitors. (*Id.* at 477.)

According to Mr. White's testimony, the Committee investigated the incident involving Puch and Dr. Beaven, prior to the trial, and issued Puch a warning letter (Defendant's Exhibit E). (*Id.* at PAGEID # 478-81.) Mr. White testified that the Committee determined that—although Puch made a "racially motivated" and "derogatory" comment—his actions only warranted a warning letter because Puch "didn't threaten" Dr. Beaven, but rather he engaged in "name-calling." (*Id.* at PAGEID # 494; Defendant's Exhibit E.) The Committee did not "present a flag" on Puch's record, which is the Committee's most serious sanction. (Doc. 50 in Case No. 3:18-po-00062 at PAGEID # 477, 485.) However, during his testimony, Mr. White did characterize Puch's conduct as "the disruptive behavior." (*Id.* at PAGEID # 487.) He also admitted on cross-examination that the Committee is only an administrative body, does not have the authority to issue citations, and does not have the authority to <u>determine</u> what is <u>disorderly</u> conduct, although

6

it does have the authority to <u>assess</u> what is <u>disruptive</u> behavior.  (*Id.* at PAGEID # 489.)

Mr. White identified Defendant's Exhibit D as including the report from the disruptive behavior reporting system that Dr. Beaven completed based on the incident with Puch.  (*Id*. at PAGEID # 482.)  Mr. White testified that, after the Committee concluded an incident investigation (which included Mr. White's interview of Dr. Beaven), he filled out the section of the report under "Impact," where he indicated "None" for both "Experiencer Severity" and "Disruptor Severity."  (*Id.* at PAGEID # 482, 485; Defendant's Exhibit D.)  Mr. White explained that this meant Dr. Beaven did not experience any "severity" and that the incident was not severe, based on his assessment in accordance with the Committee.  (Doc. 50 in Case No. 3:18-po-00062 at PAGEID # 193.)

## II.  STANDARD OF REVIEW

"In all cases of conviction by a United States magistrate [judge] an appeal of right shall lie from the judgment of the magistrate [judge] to a judge of the district court of the district in which the offense was committed."  18 U.S.C. § 3402.  In such an appeal, "[a] defendant is not entitled to a trial de novo by a district judge."  FED. R. CRIM. P. 58(g)(2)(D).  "The scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge."  *Id.*  Thus, a "district court judge is required to apply the same standard of review to the magistrate judge's decision as [a circuit court] would apply to a decision that originated from a district court judge."  *United States v. Evans*, 581 F.3d 333, 338 n.4 (6th Cir. 2009).  A district court on appeal reviews any legal determinations by the magistrate judge *de novo* and any findings of fact for clear error.  *Id.*

When a defendant challenges his conviction on the basis that there was insufficient

7

evidence to convict him, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (emphasis in original). If so, then the conviction must be upheld. *United States v. Fekete*, 535 F.3d 471, 476 (6th Cir. 2008). "A defendant claiming insufficiency of the evidence bears a very heavy burden." *Id.* (internal quotation marks removed). "Circumstantial evidence alone is sufficient to sustain a conviction under this deferential standard of review." *Id.* Additionally, "[t]he government is given the benefit of all reasonable inferences drawn from the evidence, and courts must refrain from independently judging the weight of the evidence." *Id.*; *see also United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (the reviewing court does not weigh the evidence, assess the credibility of witnesses, or substitute its judgment for that of the trier of fact).

### III. ANALYSIS

In his brief, Puch makes three arguments. The Court addresses each one below.

#### (1) Argument Concerning Notice of Charge

Puch argues that he was not given appropriate notice of his charge. (Doc. 6 at PAGEID # 8.) In Puch's Appellant Brief, he states: "Based upon issues raised [at trial], Judge Newman asked for post-trial briefs. Mr. Puch asserted [in his post-trial brief submitted to Magistrate Judge Newman] that he was not given appropriate notice of his charge," and he made other arguments. (Doc. 6 at PAGEID # 8.) In a footnote in Puch's Appellant Brief, he states: "Mr. Puch hereby incorporates his argument about lack of sufficient notice he raised in his Trial brief found at docket #44 in 3:18-po-00062." (*Id.*)

8

This raises an initial question: is the issue of whether Puch was given appropriate notice of his charge properly before this Court on appeal? *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 452-53 (6th Cir. 2003) (Sixth Circuit joining "the many circuits that have explicitly disallowed the incorporation by reference into appellate briefs of documents and pleadings filed in the district court"; holding that party on appeal failed to brief two issues, and therefore waived its argument on them, where the party presented three issues for review, but only actually briefed one of the issues while purporting to incorporate by reference arguments made in filings in the trial court for the two other issues); *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (internal quotation marks omitted).

Regardless, even if Puch did not waive the issue by failing to actually brief it before this Court, it lacks merit. As the Government's Appellee Brief notes, the initiating document in Puch's underlying case includes a copy of both (1) the "Violation Notice," which is signed by Puch and indicates that the "Offense Charged" is 38 CFR 1.218(b)(11), the "Factual Basis for Charge" is disorderly conduct, and the date, time, and location of the offense, and (2) a Violation Description page (which the Government terms the "Probable Cause Statement") that includes, among other information, a narrative description of the alleged violation. (Doc. 1 in Case No. 3:18-po-62; *see also* Government Exhibit 3.) Additionally, Puch concedes that his counsel was provided with the probable cause statement (Violation Description page) at the initial appearance.

Puch also concedes that the Sixth Circuit has held that, at least with respect to the regulation at issue, a violation notice need not cite the substantive offense (38 C.F.R. § 1.218(a)(5)) if it cites

9

the penalty provision (38 C.F.R. § 1.218(b)(11)), as was the case here. *See United States v. Williams*, 892 F.2d 1044, 1990 U.S. App. LEXIS 195, at *6-7 (6th Cir. 1990). The Court finds that Puch was provided adequate notice of the charge against him and the allegations he would need to defend against at trial, and the single case that Puch relied on in his post-trial brief (an unpublished district court case from outside of the Sixth Circuit) does not support his specific contention and does not show that notice was constitutionally deficient in the circumstances here. *Id.*; *see also United States v. Lawrence*, 755 F. App'x 703, 705 (9th Cir. 2019) ("the citation included the phrase 'disorderly conduct' as well as the date, time, and location of the incident, and [defendant] received a 'Statement of Probable Cause' prior to trial detailing the factual basis of the charge. In the context of a petty offense, this information suffices for constitutionally adequate notice").

### (2) **Argument Concerning Sufficiency of the Evidence**

Puch also asserts that (even if he was properly noticed of his charge) the evidence was insufficient to support his conviction. (Doc. 6 at PAGEID # 8-12.) He argues that no reasonable person could conclude that the "name-calling" makes him guilty of disorderly conduct as contemplated by 38 C.F.R. § 1.218. (*Id.*) In response, the Government asserts that the Magistrate Judge correctly determined that Puch's actions constituted disorderly conduct in violation of 38 C.F.R. § 1.218(b)(11) because he caused Dr. Beaven to become so rattled that she was unable to treat her remaining patients that day, caused the VA police to prepare and respond to what they thought was an emergency situation (in response to Dr. Beaven's call), and caused the normal operations of the VA facility to be impeded. (Doc. 8 at PAGEID # 20-25.)

As stated above, Magistrate Judge Newman found Puch guilty of disorderly conduct

pursuant to 38 C.F.R. § 1.218(b)(11). In pertinent part, the substantive offense section and penalty section in 38 C.F.R. § 1.218 at issue state:

> (a) Authority and rules of conduct. Pursuant to 38 U.S.C. 901, the following rules and regulations apply at all property under the charge and control of VA (and not under the charge and control of the General Services Administration) and to all persons entering in or on such property. …
>
>> (5) Disturbances. Conduct on property which creates loud or unusual noise; which unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots; which otherwise impedes or disrupts the performance of official duties by Government employees; which prevents one from obtaining medical or other services provided on the property in a timely manner; or the use of loud, abusive, or otherwise improper language; or unwarranted loitering, sleeping, or assembly is prohibited. …
>
> …
>
> (b) Schedule of offenses and penalties. Conduct in violation of the rules and regulations set forth in paragraph (a) of this section subjects an offender to arrest and removal from the premises. Whomever shall be found guilty of violating these rules and regulations while on any property under the charge and control of VA is subject to a fine as stated in the schedule set forth herein or, if appropriate, the payment of fixed sum in lieu of appearance (forfeiture of collateral) as may be provided for in rules of the United States District Court. Violations included in the schedule of offenses and penalties may also subject an offender to a term of imprisonment of not more than six months, as may be determined appropriate by a magistrate or judge of the United States District Court: …
>
>> (11) Disorderly conduct which creates loud, boisterous, and unusual noise, or which obstructs the normal use of entrances, exits, foyers, offices, corridors, elevators, and stairways or which tends to impede or prevent the normal operation of a service or operation of the facility, $ 250.

38 C.F.R. §§ 1.218(a)(5), (b)(11).

In short, "[t]he regulations warn a citizen against 'loud, boisterous, and unusual noise' and against any behavior which is otherwise disruptive to the VA hospital's normal functioning." *Williams*, 892 F.2d 1044, 1990 U.S. App. LEXIS 195, at *5. As stated by the Sixth Circuit, "the controlling standard of conduct is reasonably clear: if the conduct would tend to disturb the routine

operations of a VA hospital, such conduct is prohibited." *Id.* at *6. In accordance with the text of the regulation set forth above, in order to find a defendant guilty pursuant to 38 C.F.R. §§ 1.218(b)(11), the Government must prove beyond a reasonable doubt that:

> (1) the defendant engaged in the conduct at issue on property under the charge and control of VA; and
>
> (2) such conduct (a) created loud, boisterous, and unusual noise; or (b) unreasonably obstructed the normal use of entrances, exits, foyers, offices, corridors, elevators, or stairways; or (c) tended to impede or prevent the normal operation of a service or operation of the facility.

38 C.F.R. §§ 1.218(a)(5), (b)(11).

Viewing the evidence in the light most favorable to the Government, as this Court must, the Court concludes that a rational trier of fact could have found Puch guilty of disorderly conduct pursuant to 38 C.F.R. §§ 1.218(b)(11) beyond a reasonable doubt. The Court finds support for the conclusion that Puch's conduct at issue (1) took place on property under the charge and control of the VA, and (2) tended to impede or prevent the normal operation of a service or operation of the facility.[1] Among other things, the evidence at trial included that Puch's conduct took place at the Dayton VA Medical Center, involved the use of abusive or otherwise improper language, caused Dr. Beaven (a VA nurse practitioner who was providing care to patients that day) to exit her office and call the police, and impacted Dr. Beaven's ability to interact or provide care. (*See, e.g.* Doc. 48 in Case No. 3:18-po-00062 at PAGEID # 356-58, 362-66, 368, 371, 382-83, 386-87, 425-27.) Furthermore, Puch's conduct was prohibited under the controlling standard set forth by the Sixth Circuit because it "would tend to disturb the routine operations of a VA hospital."

---

[1] The Court also finds that the evidence supports the conclusion that Puch's conduct "impede[d] or disrupt[ed] the performance of official duties by Government employees" and involved "the use of loud, abusive, or otherwise improper language." 38 C.F.R. §§ 1.218(a)(5) (emphasis added).

*Williams*, 892 F.2d 1044, 1990 U.S. App. LEXIS 195, at *6.

Therefore, Puch has not carried his "very heavy burden" in this appeal of showing insufficiency of the evidence. *Fekete*, 535 F.3d at 476; *see also Williams*, 892 F.2d 1044, 1990 U.S. App. LEXIS 195, at *9 (holding that evidence of the defendant's physical threats to his supervisor at a VA hospital "<u>as well as</u> evidence that his confrontation with [his supervisor] distracted medical personnel from their duties" was sufficient to find defendant guilty of disorderly conduct beyond a reasonable doubt; affirming district court's determination that the evidence against the defendant was sufficient to convict him of disorderly conduct in violation of 38 C.F.R. § 1.218(b)(11)) (emphasis added).

### (3) **Argument Concerning the First Amendment**

Finally, Puch asserts that his speech was protected under the First Amendment as mere "name calling" (without any threat) and, therefore, applying 38 C.F.R. § 1.218 to his conduct unconstitutionally infringed upon his freedom of speech. (Doc. 6 at PAGEID # 8-9, 13-14.) In response, the Government asserts that Puch's conviction should be affirmed because no one enjoys an unfettered right to free speech, that 38 C.F.R. § 1.218 is constitutionally sound, and that Puch's speech in the VA facility (a "non-public fora") was not protected in these circumstances. (Doc. 8 at PAGEID # 20-21, 25-26.)

The First Amendment's freedom of speech is not unlimited. *See, e.g., Scheneck v. United States*, 249 U.S. 47, 52, 39 S. Ct. 247, 63 L. Ed. 470 (1919) (constitutional right to freedom of speech does not protect words used to create a "clear and present danger" that will bring about a "substantive evil" that the government has power to prevent); *R.A.V. v. St. Paul*, 505 U.S. 377, 382-84, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) (discussing various permissible restrictions on

13

the freedom of speech). Puch seems to recognize this by focusing his argument on whether his conduct at issue constitutes a "true threat" of violence. He argues that it does not and, therefore, that it is protected speech under the First Amendment. However, one's freedom of speech is not limited only by speech that constitutes a "true threat" of violence or other types of speech that are generally unprotected regardless of the forum in which it is made. *See id.*; *United States v. Coss*, 677 F.3d 278, 289 (6th Cir. 2012) (recognizing that "true threats" are not protected speech); *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010) ("Simply because the government may own a piece of property … does not mean that property is open to all types of expressive activity at all times").

A VA hospital or VA medical facility is a non-public forum. *United States v. Szabo*, 760 F.3d 997, 1002 (9th Cir. 2014); *United States v. Fentress*, 241 F. Supp. 2d 526, 531 (D. Md. 2003), *aff'd*, 69 F. App'x 643 (4th Cir. 2003) (per curiam). Puch does not argue otherwise. Therefore, restrictions at such facilities do not violate the First Amendment so long as they are (1) reasonable in light of the purpose served by the forum, and (2) viewpoint neutral. *Szabo*, 760 F.3d at 1002; *United States v. Kokinda*, 497 U.S. 720, 726-30, 110 S. Ct. 3115, 111 L. Ed. 2d 571 (1990); *Fentress*, 241 F. Supp. 2d at 531 ("Because the VA hospital is a nonpublic forum, restrictions on speech at a VA hospital of the kind in 38 C.F.R. § 1.218(b)(11) are subject to rational basis review, which is the most deferential standard of review available under the First Amendment").

First, the Court finds that the restrictions in 38 C.F.R. § 1.218(b)(11) are reasonable in light of the purposes served by the Dayton VA Medical Center. "The purpose of a VA hospital is, obviously, treating patients." *Fentress*, 241 F. Supp. 2d at 531. Restricting conduct (that includes speech) tending to impede or prevent the normal operation of a service or operation of a

14

VA hospital is reasonable to serve its purpose of treating patients. *See Szabo*, 760 F.3d at 1002 ("[w]e have recognized that patients at VA medical facilities have significant health care needs, which justify the government's prohibiting conduct that diverts attention and resources from patient care. In a nonpublic forum, the First Amendment does not forbid … exclusion of speakers who would disrupt the forum and hinder its effectiveness for its intended purpose") (internal citation, alterations, and quotation marks omitted). Puch does not argue otherwise.

Second, the Court finds that the regulation at issue is viewpoint neutral. The regulation "does not discriminate on the basis of content or viewpoint." *Kokinda*, 497 U.S. at 736. Nothing in the regulation demonstrates that its enactment was "an effort to suppress expression merely because public officials oppose the speaker's view." *Id.* at 730; *see also Szabo*, 760 F.3d at 1003 ("[i]t is undisputed that 38 C.F.R. § 1.218(a)(5) is a viewpoint neutral regulation"). Again, Puch does not argue otherwise.

Therefore, even if Puch's conduct constituted generally protected speech, 38 C.F.R. §§ 1.218 (a)(5) and (b)(11) would not be unconstitutional as applied to his conduct. *Szabo*, 760 F.3d at 1003 (finding that, even if defendant's conduct constituted protected speech, 38 C.F.R. § 1.218(a)(5) would not be unconstitutional as applied to his conduct); *Fentress*, 241 F. Supp. 2d 531 ("there are very few instances, if any, where the regulation [38 C.F.R. § 1.218(b)(11)] would have the effect of unconstitutionally prohibiting speech").

## IV.  CONCLUSION

Accordingly, based on the foregoing, the Court **AFFIRMS** the Magistrate Judge's verdict and **DENIES** Defendant-Appellant Lawrence Puch's appeal (Doc. 1). The Clerk shall enter judgment accordingly, whereupon this case is **TERMINATED** in this Court.

**DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, February 25, 2020.

>                                s/Thomas M. Rose
>                     _____
>                                THOMAS M. ROSE
>                     UNITED STATES DISTRICT JUDGE